UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TREE OF LIFE CHRISTIAN
SCHOOLS,

    Plaintiff,

v.

Civil Action 2:11-cv-00009
Judge George C. Smith
Magistrate Judge E.A. Preston Deavers

CITY OF UPPER ARLINGTON,

    Defendant.

## OPINION AND ORDER

This matter came before the Court for a discovery conference on February 29, 2012. Defendant seeks the identity of one of Plaintiff's donors so that it may depose the donor. Plaintiff contends that such discovery would infringe on its, and its donor's, First Amendment right of association. Due to the nature of the dispute, the Court set an expedited briefing schedule. For the reasons that follow, Defendant's discovery request is **DENIED**.

### I.

In this action, Plaintiff brings various claims against Defendant including violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Plaintiff, a private religious and educational institution, purchased property located in Upper Arlington's Office and Research District with the intent of using that property to consolidate its various religiously based schools. Defendant, however, denied Plaintiff's application for a conditional permit to use the property in such a fashion. Plaintiff contends, under RLUIPA, that Defendant's actions are not in furtherance of a compelling interest and have imposed a substantial burden on the exercise of Plaintiff's religion.

The current discovery dispute centers around the identity of Plaintiff's largest donor. Discovery has revealed that a single donor pledged the entire $6.5 million dollar purchase price of the property at issue. Plaintiff asserts that this donor pledged the money with the express requirement that his/her identity would remain confidential. According to deposition testimony, Plaintiff has received approximately $1.3 million dollars of this pledge to date, with the remainder to be forthcoming. Given this payment plan, Defendant's briefing indicates that Plaintiff took out a bank loan of over $5 million dollars on the property.

Defendant seeks the identity of Plaintiff's donor so that it may depose the donor. Defendant maintains that a deposition is necessary so that it may inquire into whether the "donor is willing to donate a similar sum toward the purchase of other property that is suited to Plaintiff's stated purposes . . . ." (Def.'s Disc. Br. 5, ECF No. 44.) It submits that this information is relevant to whether Defendant's actions have created a substantial burden on Plaintiff's exercise of religion. Additionally, because the pledge in question has apparently not been reduced to writing, Defendant wishes to inquire as to the donor's capability to pay the rest of the pledged amount. Defendant contends that if the donor is unable to provide the pledged money, Plaintiff will likely default on its loans and be unable to use the property in question, making this action moot.

Plaintiff opposes Defendant's discovery request. Plaintiff maintains that disclosure of the donor's identity will violate its First Amendment right to association. According to Plaintiff, disclosure of the donor's identity as well as the deposition testimony Defendant seeks will alter, and put at risk, the relationship between Plaintiff and its donor and may jeopardize future donations from this donor and others. Furthermore, Plaintiff asserts that Defendant has not demonstrated the need for the information required to overcome the burden disclosure would

place on First Amendment rights. Defendant, on the other hand, maintains that it is willing to submit to a protective order shielding the donor's identity. The protective order, Defendant posits, would diminish the impact of the disclosure and will not impose a significant risk to Plaintiff's First Amendment rights.

## II.

The scope of discovery is generally broad. Pursuant to Federal Rule of Civil Procedure 26, a party is generally entitled to discover any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). This general standard, however, applies only to any "nonprivileged matter." *Id.* Furthermore, "[t]he scope of discovery is, of course, within the broad discretion of the trial court." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

In certain instances the constitutional right to freedom of association can outweigh the need for disclosure of information. *See NAACP v. Alabama*, 357 U.S. 449, 460–67 (1958) (holding that the NAACP did not have to produce its membership list because production would result in "the likelihood of a substantial restraint upon" the right to freely associate). It is well established that "[f]reedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998). The freedom to associate encompasses the ability to make financial contributions in order to further a common goal. *See Beckley v. Valeo*, 424 U.S. 1, 22 (1976) (holding that contribution limitations impinged on protected associational freedoms). Given the right to freedom of association, disclosure of information may be inappropriate when such disclosure will adversely affect an organization's ability "to pursue [] collective efforts to foster beliefs" and may "induce members to withdraw" or "dissuade others from joining . . . ."

3

*NAACP*, 357 U.S. at 462–63.

Based on the principles of *NAACP v. Alabama*, various federal courts have acknowledged a First Amendment privilege when discovery requests infringe on a party's associational rights. *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 479–81 (10th Cir. 2011); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *In re Heartland Inst.*, No. 11 CV 2240, 2011 WL 1839482, at *2 (N.D. Ill. May 13, 2011) ("Courts have recognized that there is a right to free association, which is implicated when an organization is compelled to disclose its list of members or donors, thereby causing a chilling effect on the organization."). Such a privilege is not absolute, and courts typically balance the interest in disclosure and the burden imposed on association. *See, e.g.*, *Perry*, 591 F.3d at 1160–61. Although it does not appear that the United States Court of Appeals for the Sixth Circuit has enunciated a specific test with regard to a First Amendment privilege, it has suggested that a balancing test is appropriate when free association rights are at stake. *See Marshall v. Bramer*, 828 F.2d 355, 359 (6th Cir. 1987) (recognizing that, in cases concerning disclosure of membership lists, the Supreme Court has balanced government interest in requiring disclosure against the association rights of group members).

Applying a First Amendment privilege, federal courts have first required the party opposing discovery to demonstrate an "arguable first amendment infringement." *Perry*, 591 F.3d at 1160. Accordingly, a party must "demonstrate an objectively reasonable probability that disclosure will chill associational rights." *Independence Inst. v. Gessles*, No. 10-cv-00609, 2011 WL 809781, at *2 (D. Colo. Mar. 2, 2011) (internal quotations omitted); *see also In re Heartland*, WL 1839482, at *2 ("To assert a First Amendment privilege a concrete showing of infringement is unnecessary, and instead the movant need only show that there is some

probability that disclosure will lead to reprisal or harassment.") (internal quotations omitted). The Court may look to whether disclosure will result in "membership withdrawal, discouragement of new members, or . . . other consequences which objectively suggest an impact on . . . the members' associational rights." *Perry*, 591 F.3d at 1160. Finally, courts have suggested that violations of a member's desired anonymity may infringe on associational rights. *See, e.g.*, *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164, 2007 WL 852521, at *4 (D. Kan. Mar. 16, 2007) ("[A]ctions may infringe on the First Amendment right of association . . . by attempting to require disclosure of membership where anonymity is desired . . . .").

If the party opposing discovery establishes an arguable First Amendment infringement, courts then shift the burden to the party seeking discovery to "[']demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'" *Perry*, 591 F.3d at 1161 (quoting *NAACP*, 357 U.S. at 463). In other terms, courts "balance the burdens imposed on individuals and associations against the significance of the . . . interest in disclosure." *Id.* (internal quotations omitted). Courts will look to a variety of factors in balancing these interests including "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Heartland Surgical Specialty*, 2007 WL 852521, at *3. "Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation–a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry,* 591 F.3d at 1161; *see also Anderson v. Hale*, 2001 WL 503045, at *4 (N.D. Ill. May 10, 2001) ("[T]he inquiring party must show that the information

sought is so relevant that it goes to the 'heart of the matter'; that is, the information is crucial to the party's case.").

## III.

The Court concludes that Plaintiff has demonstrated a reasonable probability that the disclosure Defendant seeks will have a chilling effect on Plaintiff's First Amendment associational rights. As detailed above, Defendant seeks the identity of Plaintiff's largest donor. Should it become public knowledge that Plaintiff disclosed the identity of one of its donors, it is highly possible, if not probable, that this could hinder Plaintiff's ability to receive donations in the future. Even assuming that a protective order would prevent public disclosure, revelation of the donor's identity will still adversely impact the associational rights of Plaintiff and its donor. Plaintiff indicates that the donor pledged money for the property on the condition of confidentiality. Accordingly, Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor. Furthermore, Defendant has openly expressed that it intends to use this discovery of the donor's identity so that it may depose the donor concerning private financial information as well as the donor's willingness to donate to other property. The Court finds it self-evident that inquiries into these inherently private topics will likely cause the donor to question donations to Plaintiff, or any other religious institution for that matter, in the future. *Cf. Perry*, 591 F.3d at 1163 (finding it to be self-evident that the discovery request in question implicated important First Amendment interests).

Having determined that disclosure has a reasonable possibility of a chilling effect, the Court must assess the Defendant's interest in obtaining disclosure. Defendant provides two reasons why the information it seeks is important. First, Defendant contends that if the donor is

6

willing to donate towards another property, it might be able to show that it has not imposed a substantial burden on Plaintiff's religious exercise. Substantial burden is no doubt a fact intensive inquiry necessary to a RLUIPA claim. *See Living Water Church of God v. Charter Tp. of Meridian*, 258 F. App'x 729, 733–34 (6th Cir. 2007) (suggesting that substantial burden under RLUIPA is a high hurdle "and that determining its existence is fact intensive"). Nevertheless, while the information Defendant seeks may be relevant to the substantial-burden analysis, the Court cannot find that the information is crucial to Defendant's case. Put another way, Defendant has not shown that this information is necessary to its ability to raise a substantial-burden defense. Furthermore, as Plaintiff suggests, Defendant has been able to explore other sources of information detailing Plaintiff's finances.

Second, Defendant contends that the donor's deposition may show that Plaintiff will be unable to make payments on the property, effectively mooting this case. The Court finds that this second proposed line of inquiry is based totally on speculation. More fundamentally, the Court concludes that this argument does not justify the disclosure of the identity or overcome the burden imposed upon Plaintiff and the donor's First Amendment association rights.

Ultimately, the Court concludes that Defendant has failed to demonstrate that its interest in the discovery outweighs the potential infringement on Plaintiff's and the donor's associational rights. Although the donor's identity is relevant within the broad confines of Rule 26, the Court is not convinced that the donor's identity is "highly relevant" to this case. Accordingly, the Court finds that the potential infringement of First Amendment rights outweighs the importance of disclosure in this case.

Finally, given the circumstances of this case, a protective order will not be sufficient to protect the associational rights at stake. Defendant cites the Sixth Circuit's decision in *Marshall*

7

to support the notion that a protective order will resolve any potential infringement. In *Marhsall*, the Sixth Circuit permitted the disclosure of a membership list of the Ku Klux Klan. 828 F.2d at 359–60. The Sixth Circuit held that a protective order prohibiting public disclosure of the list made "the threat to first amendment rights . . . inconsequential." *Id.* at 360. The Court finds *Marshall* distinguishable. Here, Defendant seeks the identity of Plaintiff's confidential donor so that it may ask the donor questions regarding the donor's private finances. As detailed above, even assuming a protective order could shield the donor's identity from the public, the discovery Defendant seeks will still infringe on the relationship between Plaintiff and its donor.

### IV.

For the foregoing reasons, Defendant's discovery request is **DENIED**.

**IT IS SO ORDERED.**

Date: March 12, 2012                                      /s/ *Elizabeth A. Preston Deavers*
                                                                        Elizabeth A. Preston Deavers
                                                                        United States Magistrate Judge