# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Tree of Life Christian Schools,

        Plaintiff,

-v-                                    **Case No.: 2:11-cv-009**
                                            **JUDGE SMITH**
                                            **Magistrate Judge Deavers**

The City of Upper Arlington,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant the City of Upper Arlington's Motion for

Summary Judgment (Doc. 36), Plaintiff Tree of Life Christian Schools' Motion for Summary

Judgment (Doc. 64), and Defendant's Second Motion for Summary Judgment (Doc. 65).

Responses and replies have been filed and these motions are now ripe for review. For the reasons

that follow, the Court **GRANTS** Defendant's First Motion for Summary Judgment; **DENIES**

Defendant's Second Motion for Summary Judgment and **DENIES** Plaintiff's Motion for

Summary Judgment.

## I.    BACKGROUND

### A.    Tree of Life Christian Schools

Plaintiff Tree of Life Christian Schools ("Plaintiff" or "Tree of Life") is a private Christian

school located in the Columbus, Ohio, metropolitan area serving approximately 660 students, and

employing approximately 150 people. Tree of Life is currently scattered across four campuses in

different locations of the metropolitan area, including the Northridge campus, Indianola campus,

Dublin campus, and Westerville campus.[1]  (Verified Compl. ¶¶ 1, 25-28, 35-36).  Tree of Life operates as a non-profit religious corporation under the laws of the State of Ohio.  Tree of Life's principal place of business is located at 935 Northridge Road, Columbus, Ohio.  (Verified Compl. ¶ 8).

Tree of Life was founded in 1978, when members of the Linden Church of Christ, Beechwold Church of Christ, and Minerva Park Church of Christ collectively established a school in north Columbus.[2]  Members from these three churches serve on the school board governing Tree of Life.  The school was initially known as Linden Christian School and was later renamed Tree of Life.  (Verified Compl. ¶¶ 10-12).

The primary purpose of Tree of Life is to assist parents and the Church in educating and nurturing young lives in Christ.  Their mission statement reads: "In partnership with the family and the church, the mission of Tree of Life Christian Schools is to glorify God by educating students in His truth and discipling them in Christ.  'A cord of three strands is not easily torn apart.' (Ecclesiates 4:12)."  (Verified Compl. ¶¶ 16-17).  Tree of Life's vision statement states: "As students are led to spiritual, intellectual, social and physical maturity, they become disciples of Jesus Christ, walking in wisdom, obeying His word and serving in His Kingdom."  (Verified Compl. ¶ 18).  Tree of Life describes their philosophy of education as "quintessentially and

---

[1]Since the filing of the Verified Complaint, Plaintiff has closed the Westerville location. (Marrah Depo. at 75).

[2] The following churches have also sponsored or contributed to Tree of Life, including providing facilities space, financial support, and school board members: Northeast Church of Christ, Indianola Church of Christ, Westerville Christian Church, North Park Church of Christ, Discover Christian Church, Pickerington Christian Church, Hilliard Church of Christ, and Worthington Christian Church.

undeniably Christian," and believes this philosophy "puts the Bible at the center and asks the student to evaluate all he/she studies through the lens of God's Word." (Verified Compl. ¶ 19). Tree of Life requires all parents who enroll their children to certify that they agree with the mission, philosophy, and vision. Further, all faculty and staff must also sign a statement of faith, and must be active members of a local, "Bible-believing congregation." (Verified Compl. ¶¶ 21-22).

Tree of Life has limited space in its current buildings for new students. The Indianola and Dublin campuses are located within existing church buildings of sponsoring churches of Tree of Life. However, there are no long-term leases with these churches, and the schools occupy space in the church facilities as at-will tenants. Further, the facilities are located in buildings that are old and in need of substantial upkeep and/or remodeling. The lack of long-term space and scattered campuses has hampered the unity of Tree of Life's ministry. (Verified Compl. ¶¶ 29-34, 37-38).

In 2006, Tree of Life began searching for property that would allow for expansion of its ministry. For over two years, Tree of Life reviewed more than twenty sites and facilities within Franklin County, and finally found a building and property located at 5000 Arlington Centre Boulevard in Upper Arlington, Ohio (hereinafter "the property"). The property contains an office building that is approximately 254,000 square feet and is centrally located to serve all of Tree of Life's current constituents. The property's size would allow for consolidation of preschool through twelfth grade at one location and to accommodate even more students. Further, the consolidation would allow Tree of Life to minister across all grade levels, reduce staff and student transportation costs, and provide updated facilities. Tree of Life ultimately purchased the property on August 11, 2010. (Verified Compl. ¶¶ 39-50).

**B.    The City of Upper Arlington**

Defendant, the City of Upper Arlington, Ohio, ("the City" or "Upper Arlington"), is a public body authorized under the laws of the State of Ohio, and operating within the course and scope of its authority and under the color of state law.  (Verified Compl. ¶ 9).

In 2001, the City of Upper Arlington commissioned a development plan ("the Master Plan") to provide guidance for its land use.  According to the Master Plan, in order for the City to maintain its existing level of facilities and services, and in order to provide for future capital needs, it is critical for the City to enhance its revenues.  The revenue generated per acre from commercial use far exceeds the revenue provided by residential use.  In order to maximize revenues, the City was directed in the Master Plan to create opportunities for office development that emphasize high-paying jobs.  Upper Arlington is landlocked and primarily residential.  Only 4.7% of its useable land area is zoned "Commercial," and only 1.1% is in office use.  Therefore, full use of existing office space, as well as the development of additional office space, is critical for the City's financial stability.  The City's opportunities to expand are limited; therefore, it must maximize its few opportunities for commercial use, or it cannot maintain its level of services for its residents. (Affidavit of Chad Gibson, Senior Planning Officer for Upper Arlington, ¶¶ 3-4).

All land and development in Upper Arlington is regulated by the Upper Arlington Unified Development Ordinance ("the UDO"), which employs "non-cumulative" or "exclusive" zoning. Article 5 of the UDO sets forth the regulations applicable to the use and development of land in Upper Arlington and establishes the zoning districts, including residential, commercial, planned, and miscellaneous.

The largest office building in Upper Arlington is located at 5000 Arlington Centre

Boulevard (the "commercial office building"), in the ORC Office and Research District. The commercial office building was previously occupied by AOL/Time Warner, and it generated substantial income tax and property tax revenues for the City. In 2001, it accounted for 29% of the City's income tax revenues. However, operations at the commercial office building declined over the course of recent years. Time Warner ceased operations at this location in 2009. Requiring commercial use of the commercial office building is consistent with the language and purposes of the ORC Office and Research District, as well as the Master Plan. (Affidavit of Catherine Armstrong, Finance Director for Upper Arlington ¶¶ 4-7).

The purpose of the "ORC Office and Research District" is set forth in Section 5.03(A)(6) of the UDO as follows:

> [T]o allow offices and research facilities that will contribute to the City's physical pattern of planned, healthy, safe, and attractive neighborhoods. The ORC district should also provide job opportunities and services to residents and contribute to the City's economic stability. Permitted uses generally include, but are not limited to business and professional offices, research and development, book and periodical publishing, insurance carriers, corporate data centers, survey research firms, and outpatient surgery centers.

A complete list of permitted uses appears in Table 5-C of the UDO. Schools of any type are not permitted in the ORC Office and Research District. (Gibson Aff. ¶¶ 5-7).

Section 5.01(B) of the UDO governs the rules of application. Section 5.01(B)(2) entitled "Permitted Uses" provides:

> Only a use designated as a permitted use shall be allowed as a matter of right in a zoning district and any use not so designated shall be prohibited except, when in character with the zoning district, such other additional uses may be added to the permitted uses of the zoning district by an amendment to this UDO (Section 4.04).

Section 5.01(B)(3) entitled "Conditional Uses" states:

A use designated as a conditional use shall be allowed in a zoning district when such conditional use, its location, extent and method of development will not substantially alter the character of the vicinity or unduly interfere with the use of adjacent lots in the manner prescribed for the zoning district. To this end BZAP [Board of Zoning and Planning] shall, in addition to the development standards for the zoning district, set forth such additional requirements as will, in its judgment, render the conditional use compatible with the existing and future use of adjacent lots and the vicinity. Additional standards for conditional uses are listed in Section 6.10.

Plaintiff was advised that if it desired to operate a school in the commercial office building,

it would need to apply for rezoning. Such rezoning is governed by Section 4.04 of the UDO

titled "UDO and Official Zoning Map Amendments" which specifically provides:

B.  Amendment Process: Amendments may be initiated in one of the following ways:
1. By the filing of an application to BZAP by the owner(s) of property within the area proposed to be affected or changed by said amendment;
2. By the adoption of a motion by BZAP; or
3. By the adoption of a motion by City Council and referral to BZAP. All text and map amendments shall follow the same procedure. City Council initiated text or map amendments shall be referred to BZAP for recommendation prior to Council consideration.

C.  Standards for Approval: The following criteria shall be followed in approving zoning map amendments to the UDO:
1. That the zoning district classification and use of the land will not materially endanger the public health or safety;
2. That the proposed zoning district classification and use of the land is reasonably necessary for the public health or general welfare, such as by enhancing the successful operation of the surrounding area in its basic community function or by providing an essential service to the community or region;
3. That the proposed zoning district classification and use of the land will not substantially injure the value of the abutting property;
4. That the proposed zoning district classification and use of the land will be in harmony with the scale, bulk, coverage, density, and character of the area the neighborhood in which it is located;
5. That the proposed zoning district classification and use of the land will generally conform with the Master Plan and other official plans of the City;
6. That the proposed zoning district classification and use of the land are appropriately located with respect to transportation facilities, utilities, fire

and police protection, waste disposal, and similar characteristics; and

7. That the proposed zoning district classification and use of the land will not cause undo [sic] traffic congestion or create a traffic hazard.

## C.      Tree of Life's First Appeal

In early 2009, Upper Arlington officials became aware that Tree of Life was considering purchasing the commercial office building for use as a school. On March 16, 2009, Matthew Shad, Deputy City Manager for Economic Development in Upper Arlington, met with Don Roberts of CB Richard Ellis, the listing agent, and advised him that schools were not a permitted use for that building. (Shad Aff. ¶¶ 4-7). On October 1, 2009, Tree of Life contracted to purchase the commercial office building, contingent upon zoning to allow a school. Upon learning of the buyer, on November 11, 2009, the Upper Arlington Economic Development Director advised the Tree of Life school superintendent directly that schools were not a permitted use.

On December 21, 2009, Tree of Life filed an application with Upper Arlington for a Conditional Use Permit requesting to "use the property for a place of worship, church and residential, to the extent that residential includes a private school." (Verified Compl. Ex. A). In a letter dated December 28, 2009, Mr. Gibson responded to the application by stating, among other things, that "a private school is neither a permitted use nor a conditional use in the ORC, Office and Research District (*see* UDO Table 5-C Article 5.01). Therefore, this application will <u>not</u> be scheduled for BZAP review, even if a traffic study is submitted. The applicant should submit a rezoning application if they wish to pursue a private school at this location." (Verified Compl. Ex. B).

On January 5, 2010, Tree of Life appealed Mr. Gibson's determination to the Board of

Zoning and Planning ("BZAP"). (Verified Compl. Ex. C). On March 1, 2010, the BZAP held a public hearing on the issue, and subsequently issued a Board Order upholding Mr. Gibson's determination "that the conditional use application proposing a private school in an ORC District was inappropriate and would not be scheduled for BZAP review." (Verified Compl. Ex. D). On April 2, 2010, Tree of Life appealed the BZAP decision to the Upper Arlington City Council ("City Council"). (Verified Compl. Ex. E). On April 26, 2010, the City Council held a public hearing on the appeal and ultimately voted to uphold the decision of the BZAP. (Verified Compl. Ex. F). The City Council concluded that "a private school is neither a permitted or conditional use in the Office and Research District and that rezoning is required if Appellant plans to pursue a private school at this location." (*Id*. at 4).

Despite being advised in three separate rulings that rezoning is required to operate a school in the commercial office building, Plaintiff has never initiated the rezoning process.

**D.      Tree of Life's Second Appeal**

Mr. Gibson's initial letter dated December 28, 2009, determined that the Tree of Life school was not a residential use that could be considered as a conditional use in the ORC District; however, there was no determination as to whether Tree of Life was a "Place of Worship" or a "Church." On January 5, 2010, counsel for Tree of Life wrote to Mr. Gibson asking for clarification as to "whether these uses, which are contained in the application, are, or are not, Conditional Uses in the ORC zoning district in the Upper Arlington UDO." (Verified Comp. Ex. C at 6). On February 26, 2010, Mr. Gibson addressed these issues by confirming the hearing scheduled by the BZAP on March 1, 2010, to consider the conditional use application for "a private school with ancillary uses." Mr. Gibson further stated: "At this time, no conditional use

application has been submitted for a church at this site." (Verified Compl. Ex. G).

On March 3, 2010, Tree of Life appealed this determination to the BZAP. (Verified Compl. Ex. H). The BZAP held a public hearing on June 7, 2010, and upheld Mr. Gibson's determination. The BZAP stated that "for purposes of the UDO, the proposed primary use of the property as a private school does not constitute a 'place of worship, church' as that term is used in Table 5-C of Article 5 of the UDO, and is therefore not a conditional use in the ORC District." (Verified Compl. Ex. I). On June 18, 2010, Tree of Life appealed the BZAP decision to the City Council. (Verified Compl. Ex. J). On August 16, 2010, the City Council held a public hearing and issued findings affirming the prior decisions that "for purposes of the UDO, the proposed primary use of the property as a private school does not constitute a 'place of worship, church' as that term is used in Table 5-C of Article 5 of the UDO, and is therefore not a conditional use in the ORC District." (Verified Compl. Ex. K).

Despite Tree of Life's unsuccessful appeals with the BZAP and the City Council, it continued with the purchase of the commercial office building. The closing on the commercial office building occurred on August 11, 2010.

Tree of Life appealed the final decision of the Upper Arlington City Council to the Environmental Division of the Franklin County Municipal Court, but ultimately withdrew that appeal. Tree of Life then initiated this lawsuit against Defendant Upper Arlington alleging violations of its rights to free speech, free exercise of religion, peaceable assembly, equal protection, due process, and the establishment clause under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution, as well as a violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

Plaintiff initiated this case on January 5, 2011, with the filing of a Verified Complaint and ultimately filed a Motion for Preliminary Injunction on January 28, 2011, seeking to enjoin Defendant, the City of Upper Arlington, from enforcing Article 5.01, Table 5-C of the UDO prohibiting Plaintiff from operating a religious school in the ORC Office and Research zoning district. Plaintiff sought injunctive relief on two of its claims: violation of the RLUIPA and violation of equal protection. On April 27, 2011, this Court denied Plaintiff's Motion for Preliminary Injunction (Doc. 23). Despite finding that Plaintiff demonstrated a potential likelihood of success on the merits of its RLUIPA claim, the Court found that the balance of harms did not strongly justify the issuance of a preliminary injunction.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*,

477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.   DISCUSSION

Plaintiff Tree of Life initiated this case against Defendant the City of Upper Arlington asserting claims for violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"); violation of the right to free exercise of religion; violation of the due process clause of the Fourteenth Amendment; violation of the equal protection clause; violation of the free speech clause; violation of the right to peaceable assembly under the First Amendment; violation of the Establishment Clause; and violation of Article I, Section 7 of the Ohio Constitution.

Defendant filed an initial motion for summary judgment asserting that Plaintiff failed to exhaust its locally available remedies and therefore the matter is not ripe for decision under RLUIPA. Defendant then filed a second motion for summary judgment seeking judgment on all of Plaintiff's claims. Plaintiff has also moved for summary judgment on its claims under RLUIPA, the free exercise clause, the establishment clause, the free speech clause, and the equal protection clause. The Court will first address Defendant's argument regarding ripeness because it involves a basic question of jurisdiction that goes to the very heart of the case and controversy requirement

of Article III.[3]  Then, if the case is ripe, the Court will turn to each of Plaintiff's individual claims.

A.      **Ripeness**

        Defendant Upper Arlington argues that this matter is not ripe for review by this Court

because local officials were never afforded the opportunity to address the merits of Plaintiff's

requested change in use of its property.  Despite instructing Plaintiff that the only process under

the UDO by which a non-permitted use can be allowed in an ORC, Office and Research District is

a rezoning, Plaintiff did not pursue this remedy.  Instead, Plaintiff chose to pursue a conditional

use permit, a remedy not available to it under the UDO, and the subsequent appeals associated

with seeking the permit.  The UDO clearly sets forth the permitted, prohibited and conditional

uses for each of the commercial districts in Table 5-C, Commercial Uses.  Since schools were not

a permitted or conditional use, the only process available under the UDO to operate a school in

the ORC, Office and Research District is to seek rezoning.

        The ripeness doctrine is grounded in Article III limitations on judicial power and practical

considerations of judicial economies.  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S.

803, 808 (2003).  Its purpose is "to prevent the courts through avoidance of premature

adjudication, from entangling themselves in abstract disagreements."  *Id.* at 807.  Courts generally

consider three factors to determine if a claim is ripe for review: 1) "the likelihood that the harm

alleged by [the] plaintiffs will ever come to pass"; 2) "whether the factual record is sufficiently

developed to produce a fair adjudication of the merits of the parties' respective claims"; and 3)

---

[3] The Court notes that Defendant failed to raise this issue sooner, such as in response to
the motion for preliminary injunction.  Despite this failure, ripeness cannot be waived and
therefore will be considerd by the Court.  *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 534 (6th Cir.
2004) (citing *Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health and Rehab
Serv.*, 225 F.3d 1208, 1227 (11th Cir. 2000)).

"the hardship to the parties if judicial relief is denied at [this] stage" in the proceedings. *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995). In the land-use context, the first requirement of ripeness requires "finality, an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)). In *Williamson*, the United States Supreme Court held that a regulatory taking claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.*

In cases involving First Amendment claims, "the ripeness doctrine is somewhat relaxed." *Dougherty v. Town of North Hempstead*, 282 F.3d 83, 90 (2d Cir. 2002). "It is [also] true that the existence of a constitutional claim, particularly a First Amendment claim, affects the hardship component of the ripeness inquiry" by raising the potential that the plaintiff will be harmed if the court were to stay its hand. *Miles Christi*, 629 F.3d at 540.

Defendant Upper Arlington argues that Plaintiff cannot satisfy the ripeness doctrine because Defendant was never given the opportunity to apply the prescribed rezoning standards to Plaintiff's proposed use of its facility, there are no records of or any arguments regarding the merits of a rezoning application, and there is no way to determine if the harm alleged by Plaintiff will ever come to pass.

Defendant relies on a recent decision of the Sixth Circuit that considered the ripeness issue in a case involving a RLUIPA claim. In *Miles Christi*, 629 F.3d 533, the plaintiff was a religious order that conducted services in a residential neighborhood. Neighbors complained to the

defendant township about parking congestion during service times. The township contacted the plaintiff and informed it that it needed to seek a variance for additional parking and submit a site plan detailing the intended expansion of parking spaces. The plaintiff, however, ignored the instruction and was issued a ticket by the township for violation of the zoning ordinance. The plaintiff appeared in state court on the ticket, and a record of the state court proceedings was developed, including depositions of members of the plaintiff's religious order and township officials about the events that led to the ticket being issued. However, before a final decision was rendered in state court, the plaintiff filed an action in federal court based on RLUIPA.

The Sixth Circuit held that plaintiff Miles Christi had not made sufficient efforts to resolve its dispute with the township and affirmed the district court's dismissal of the plaintiff's RLUIPA claims on ripeness grounds. The Sixth Circuit reasoned: "Finality requires the input of the zoning board on these unresolved questions." 629 F.3d at 538.

Defendant Upper Arlington asserts that Plaintiff Tree of Life ignored pleas from local zoning officials to use the appropriate process to accomplish its purposes. Upper Arlington's UDO does not allow private schools of any type in the ORC, Office and Research District where the building they purchased is located. Despite being told on several occasions that the only path for a private school to function in this district would be rezoning, Plaintiff, like the plaintiff in *Miles Christi*, chose not to seek rezoning and filed a RLUIPA claim in federal court before any decision on the merits of its planned use could be rendered by the City of Upper Arlington.

Plaintiff Tree of Life argues that the City's argument misses the point and that a rezoning application is irrelevant to the determination of its' legal claims. Plaintiff asserts that Upper Arlington's UDO is unconstitutional both on its face and as applied to Tree of Life because it was

-15-

applied to prohibit Tree of Life's school while allowing other uses such as daycares and hospitals. Tree of Life also alleges that the harm has occurred and is continuing to occur, and that going through the rezoning process would only exacerbate this harm. Tree of Life maintains that this case is ripe because the UDO was applied to its' property and a final decision was rendered by the City Council. According to Tree of Life, neither the facial challenge, nor the as-applied challenge to the decisions applying the UDO to Tree of Life would be made more final than they already are if Tree of Life were to apply for rezoning of the property.

However, Plaintiff fails to acknowledge that Upper Arlington advised it from the very beginning that to operate a private school at its location, it would have to apply for rezoning in accordance with the UDO. Plaintiff is correct that this case differs somewhat from *Miles Christi* in that Plaintiff pursued two separate appeals of the UDO, first seeking a conditional use as a school, and second as a church or place of worship.

There is no question that Plaintiff's primary purpose for its building is use as a school, therefore the conditional use application was futile. In no situation under the UDO would a school be considered a conditional use. Plaintiff's Articles of Incorporation filed with the Ohio Secretary of State describe its purpose as follows:

> To establish, maintain and operate a Christian School to teach, train, instruct and educate children on preschool, elementary and secondary levels of education. The Bible, acknowledged as the written Word of God, shall be the basic reference for all teaching. All courses of instruction on all grade levels shall be related to the Scriptures as the standard of all science, humanities and religion. Admission shall be open to all whose parents or guardians desire them to be taught the facts and precepts of the Bible.

(*See* Marrah Depo. Ex. 1A).

Similarly, the Tree of Life website states its purpose as: "The primary purpose of the

school was (and remains to this day) to assist parents and the Church in educating and nurturing young lives in Christ." (Marrah Depo. Ex. 1E). Plaintiff Tree of Life, through its superintendent, has freely admitted that it intends to use the building in question as a school. He described plans for the property as follows: "So building 4, 6, and 7 will on the first floor house preschool through 3rd grade." (Marrah Depo. at 149). He also testified that: "the 4th through 8th grade will go on the second floor." (Marrah Depo. at 149). In addition, he stated that the "third floor would be [grades] 9 through 12." (Marrah Depo. at 150). Further, "Building 2 is an arts campus. . . [c]hoir, band, digital arts, drawing arts, et cetera." (Marrah Depo. at 153).

Additionally, Ms. Lezlee Knowles, former superintendent and current assistant superintendent of Tree of Life Christian Schools, described that Tree of Life must abide by curriculum standards to participate in the Educational Choice Program and receive money from the state of Ohio. (Knowles Depo. at 8-17). In order to receive these funds, Tree of Life must maintain its status as a chartered nonpublic school with the state board of education. *See* Ohio Rev. Code § 3310.02. In order to remain a chartered nonpublic school, Plaintiff must follow strict curriculum standards for the teaching of mathematics, language arts, physical education, fine arts, science, social studies, health and history. *See* Ohio Rev. Code § 3301.16. Students at the elementary level are taught the Bible about one half hour per day and attend chapel one hour every other week. (Knowles Depo. at 12).

The Court will consider whether this case is ripe based on the analysis applied by the Sixth Circuit in *Miles Christi*: whether a dispute is "fit for a court decision in the sense that it arises in a concrete factual context and involves a dispute that is likely to come to pass." *Miles Christi*, 629 F.3d at 615. Plaintiff claims there is a sufficiently developed record to enable this Court to fairly

adjudicate the merits of the claim.  Defendant argues, and the Court agrees, that there has been no

record established regarding a proposed rezoning.  Zoning application hearings in Upper

Arlington require in-depth review of the impact a proposed rezoning would have on the

surrounding community.  The UDO provision on rezoning requires analysis of the following

elements:

> 1.  That the zoning district classification and use of the land will not
> materially endanger the public health or safety;
> 2.  That the proposed zoning district classification and use of the land is
> reasonably necessary for the public health or general welfare, such as by
> enhancing the successful operation of the surrounding area in its basic
> community function or by providing an essential service to the community
> or region;
> 3.  That the proposed zoning district classification and use of the land will
> not substantially injure the value of the abutting property;
> 4.  That the proposed zoning district classification and use of the land will
> be in harmony with the scale, bulk, coverage, density, and character of the
> area the neighborhood in which it is located;
> 5.  That the proposed zoning district classification and use of the land will
> generally conform with the Master Plan and other official plans of the City;
> 6.  That the proposed zoning district classification and use of the land are
> appropriately located with respect to transportation facilities, utilities, fire
> and police protection, waste disposal, and similar characteristics; and
> 7.  That the proposed zoning district classification and use of the land will
> not cause undo [sic] traffic congestion or create a traffic hazard.

Section 4.04(C) of the UDO.

Because Plaintiff chose to pursue a conditional use permit, rather than a rezoning as

instructed, none of this review or analysis took place.  Further, there is no dispute that schools are

not permitted in the ORC, Office and Research District.

Turning next to whether or not a dispute is likely to come to pass, Defendant argues it

cannot be decided at this stage in the proceedings.  Tree of Life's Superintendent Dr. Todd

Marrah admitted that he did not know what the outcome would have been had Tree of Life

pursued a rezoning application as instructed:

> Q. ... And admittedly you've never filed anything, you've never even started the process of rezoning, correct?
> A. Correct.
> Q. Never tried so you don't know what city council would have done had they been presented with a rezoning package; is that correct?
> A. I have an idea.
> Q. I'm just asking you for a yes or no.
> A. But I don't know.
> Q. Do you know what they would have done?
> A. No.
> Q. You didn't talk with the individual members and find out what their vote would be?
> A. No.

(Marrah Depo. at 265).

Defendant argues, and the Court agrees, that in accordance with *Miles Christi*, the Court should not interject itself into a local governmental process until the dispute is fully defined. Essentially, the only dispute resolved by the Upper Arlington BZAP and Upper Arlington City Council is whether or not Plaintiff intended to use the property as a church or a school. As previously discussed, there is no question that Plaintiff intends to use the property as a school. And a school is not a permitted use in the ORC, Office and Research District.

The Court acknowledges Plaintiff's concerns that Defendant has expressed that the property should only be used for commercial purposes. Defendant Upper Arlington has made it clear that it relies on the tax revenue from this building. However, the Court cannot state with certainty that a rezoning attempt would be futile. There is no record whatsoever of Upper Arlington's application of its zoning code in Plaintiff's case. Quite possibly, Upper Arlington may welcome the rezoning and determine that any tax revenue generated at that location is better than

the property sitting empty for close to three years. Therefore, at this time, a sufficient record has not been established to determine whether Upper Arlington's UDO places a substantial burden on Plaintiff's free exercise of religion or whether Plaintiff has been treated on equal terms with similarly situated entities.

Plaintiff argues that Upper Arlington's UDO is unconstitutional on its face and as applied to Plaintiff. Plaintiff asserts that the very existence of the UDO harms Tree of Life. Plaintiff references an example in support, that the UDO treats Tree of Life on less than equal terms with other secular assemblies or institutions that are permitted uses in the ORC Office and Research District, such as hospitals or hotels. Requiring Tree of Life to apply for rezoning for its property while other similar permitted uses do not have to apply for rezoning approval harms Tree of Life, and that harm continues until this Court determines the constitutionality of the UDO. Plaintiff concludes that a rezoning application will have no bearing on Tree of Life's claims that the zoning code is unconstitutional on its face.

Aside from this example, Plaintiff fails to explain how the UDO is unconstitutional on its face. There is no evidence that Upper Arlington's UDO allows other non-secular uses that are not permitted in the ORC Office and Research District to not seek rezoning. Upper Arlington has been consistent from the time it became aware that Plaintiff intended to purchase the commercial building that schools, both secular or non-secular, are not permitted in the ORC, Office and Research District.

This Court previously addressed Plaintiff's argument with respect to its RLUIPA claim that a daycare center could move in to the Plaintiff's building and operate as a matter of right, without having to first seek zoning permission for its use of the property, because it is a

recognized permitted commercial use in the ORC, Office and Research District. Based on Plaintiff's arguments that there are daycare centers that are licensed to operate with a capacity of 1,000 children, as well as case law that addressed the comparison between churches and child daycare centers, and concluded that allowing daycare centers and not churches could be a violation of RLUIPA, the Court found that Plaintiff will most likely be able to demonstrate that it is treated differently than a similar, secular assembly. *See, e.g.*, *Chabad of Nova, Inc. v. City of Cooper City*, 533 F. Supp. 2d 1220, 1223 (S.D. Fl. 2008).

Since the Court's ruling on Plaintiff's Motion for a Preliminary Injunction, Defendant, the City of Upper Arlington, has amended its UDO, and daycare centers are no longer a permitted use in the ORC, Office and Research District. (*See* Doc. 55-8). The City ultimately decided that if it was "required to choose between not permitting daycares in the ORC District or permitting daycares and schools in the ORC District, then Council believes that not permitting daycares in the ORC District is more consistent with the fundamental purpose of the ORC District;" and further, that "not permitting daycares in the ORC District is in accordance with the City's comprehensive plan." (*Id.*).

Therefore, despite Plaintiff's arguments to the contrary, after careful examination of the UDO, it applies equally to any other purpose that is not permitted under the UDO. Even the fact that churches or places of worship are permitted, while schools, Christian or otherwise are not, does not indicate that the UDO is unconstitutional. There is no question that the burden on the community of a pre-kindergarten through twelfth grade school is significantly greater than that of a church. A church with weekly or even bi-weekly services does not compare to the level of activity involved with a school in transporting, supervising, teaching and recreating over 600 kids

five days a week.  The decision to allow churches but not schools under the UDO is quite rational and by no means suggests any type of discrimination.   If an organization desires to operate in the ORC, Office and Research District and is not permitted under the UDO, then it must apply for rezoning with no exception.  It is well-known that primary use determines zoning, and there can be no permitted or conditional ancillary use to a prohibited primary use.  *State ex rel. Scadden v. Willhite*, 2002 Ohio 1352 (Ohio Ct. App. 10th Dist. 2002).  Therefore, the UDO is not unconstitutional on its face or as applied to Plaintiff.

Finally, Plaintiff asserts that it "has already demonstrated above how it has been harmed in this case by the City's actions and by the unconstitutional UDO, and how that harm is continuing in the future absent intervention by this Court."  (Pl.'s Memo. in Opp. at 15).  However, as this Court acknowledged in its April 27, 2011 Opinion and Order, "one who purchases property to use as a school knowing that the use as a school is not permitted does not suffer irreparable harm."  (Opinion and Order at 29).  Further, Plaintiff continues to operate its school and accommodate both its existing students and applicants.  Plaintiff's Verified Complaint states that the current Tree of Life Christian Schools facilities are old and in need of substantial upkeep and repair and/or remodeling.  (Ver. Compl. at 32).  Yet, Dr. Marrah testified that the current facilities are safe and up to code.   (Marrah Depo. at 102-03).  Additionally, Plaintiff's enrollment statistics show that very few student applications were rejected from 2007 through 2010, therefore space does not appear to be an issue.  (Marrah Depo. Ex. 1F).  Finally, when asked if on "August 11th of 2010 when you closed on this property you did so with the full knowledge that you had the data center lease and the pledges that would completely cover your expenses, that you were at little or no risk for the purchase price of the property and keeping up the property

indefinitely, correct?"  And he responded, "Correct."  (Marrah Depo. at 238-39).

In conclusion, neither the Upper Arlington BZAP, nor the Upper Arlington City Council were given the opportunity to apply the clearly outlined criteria set forth in Section 4 of the UDO to Plaintiff's proposed use of the commercial office building as a school.  The Court agrees that Defendant should be afforded the opportunity to develop a record and take a definitive position on this issue.  Accordingly, this case is not ripe for review.

## IV.    CONCLUSION

In summary, the Court finds that this case is not ripe for review.  Although this Court is sympathetic to Plaintiff's situation, Plaintiff did purchase the property fully aware that the building was not zoned for use as a school.  Even if the Court had found that this case was ripe, the Court believes that the circumstances have changed, primarily the removal of daycare centers from the ORC Office and Research District, that no longer justify a finding in Plaintiff's favor.

For the foregoing reasons, the Court **GRANTS** Defendant's First Motion for Summary Judgment; **DENIES** Defendant's Second Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

The Clerk shall remove Documents 36, 64, and 65 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**