# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TREE OF LIFE CHRISTIAN SCHOOLS,**

        **Plaintiff,**

**-v-**                               **Case No.: 2:11-cv-009**
                                             **JUDGE GEORGE C. SMITH**
                                             **Magistrate Judge Deavers**

**THE CITY OF UPPER ARLINGTON,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the parties cross-motions for summary judgment.  (*See* Docs. 79 and 82).  Responses have been filed and the motions are now ripe for review.  For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

**A.**     **Tree of Life Christian Schools**

Plaintiff, Tree of Life Christian Schools ("Plaintiff" or "Tree of Life"), is a private Christian school located in the Columbus, Ohio, metropolitan area serving approximately 660 students, and employing approximately 150 people.  Tree of Life is currently scattered across four campuses in different locations of the metropolitan area, including the Northridge campus, Indianola campus, Dublin campus, and Westerville campus.[1]  (Verified Compl. ¶¶ 1, 25-28, 35-

---

[1] Since filing the Verified Complaint, Plaintiff has closed the Westerville location. (Marrah Depo. at 75).

36).  Tree of Life operates as a non-profit religious corporation under the laws of the State of Ohio, with a principal place of business at 935 Northridge Road, Columbus, Ohio.  (Verified Compl. ¶ 8).

Tree of Life was founded in 1978, when members of the Linden Church of Christ, Beechwold Church of Christ, and Minerva Park Church of Christ collectively established a school in north Columbus.[2]  Members from these three churches serve on the school board governing Tree of Life.  The school was initially known as Linden Christian School and was later renamed Tree of Life.  (Verified Compl. ¶¶ 10-12).

The primary purpose of Tree of Life is to assist parents and the Church in educating and nurturing young lives in Christ.  Their mission statement reads: "In partnership with the family and the church, the mission of Tree of Life Christian Schools is to glorify God by educating students in His truth and discipling them in Christ.  'A cord of three strands is not easily torn apart.' (Ecclesiates 4:12)."  (Verified Compl. ¶¶ 16-17).  Tree of Life's vision statement states: "As students are led to spiritual, intellectual, social and physical maturity, they become disciples of Jesus Christ, walking in wisdom, obeying His word and serving in His Kingdom."  (Verified Compl. ¶ 18).  Tree of Life describes their philosophy of education as "quintessentially and undeniably Christian," and believes this philosophy "puts the Bible at the center and asks the student to evaluate all he/she studies through the lens of God's Word."  (Verified Compl. ¶ 19).  Tree of Life requires all parents who enroll their children to certify that they agree with the

---

[2] The following churches have also sponsored or contributed to Tree of Life, including providing facilities space, financial support, and school board members: Northeast Church of Christ, Indianola Church of Christ, Westerville Christian Church, North Park Church of Christ, Discover Christian Church, Pickerington Christian Church, Hilliard Church of Christ, and Worthington Christian Church.

mission, philosophy, and vision.  Further, all faculty and staff must also sign a statement of faith, and must be active members of a local, "Bible-believing congregation."  (Verified Compl. ¶¶ 21-22).

Tree of Life has limited space in its current buildings for new students.  The Indianola and Dublin campuses are located within existing church buildings of sponsoring churches of Tree of Life.  However, there are no long-term leases with these churches, and the schools occupy space in the church facilities as at-will tenants. Further, the facilities are located in buildings that are old and in need of substantial upkeep and/or remodeling.  The lack of long-term space and scattered campuses has hampered the unity of Tree of Life.  (Verified Compl. ¶¶ 29-34, 37-38).

As a result of Tree of Life's growth and success, it began searching in 2006 for property that would allow for expansion of its ministry.  For over two years, Tree of Life reviewed more than twenty sites and facilities within Franklin County, and finally found a building and property located at 5000 Arlington Centre Boulevard in Upper Arlington, Ohio (hereinafter "the property").  The property contains an office building that is approximately 254,000 square feet and is centrally located to serve all of Tree of Life's current constituents.  The property's size would allow for consolidation of preschool through twelfth grade at one location and to accommodate even more students.  Further, the consolidation would allow Tree of Life to minister across all grade levels, reduce staff and student transportation costs, and provide updated facilities.  Tree of Life ultimately purchased the property on August 11, 2010.  (Verified Compl. ¶¶ 39-50).

**B.      The City of Upper Arlington**

Defendant, the City of Upper Arlington, Ohio, ("the City" or "Upper Arlington"), is a public body authorized under the laws of the State of Ohio, and acting under the color of state law.  (Verified Compl. ¶ 9).  Upper Arlington is a prosperous and highly regarded suburban community, with a notable history of careful development and land use dating back to the 1910s, when brothers King and Ben Thompson first began to develop the primarily residential community with curved streets and plentiful trees.  As a now landlocked, nearly fully developed community, the City commissioned a development plan ("the Master Plan") in 2001 to provide guidance for its land use.

According to the Master Plan, in order for the City to maintain its existing level of facilities and services, and in order to provide for future capital needs, it is critical for the City to enhance its revenues.  The revenue generated per acre from commercial use far exceeds the revenue provided by residential use.  In order to maximize revenues, the City was directed in the Master Plan to create opportunities for office development that emphasize high-paying jobs. Because Upper Arlington is landlocked and primarily residential, only 4.7% of its useable land area is zoned "Commercial," and only 1.1% is in office use.  Therefore, full use of existing office space, as well as the development of additional office space, is critical for the City's financial stability.  The City's opportunities to expand are limited; therefore, it must maximize its few opportunities for commercial use, or it cannot maintain its level of services for its residents. (Affidavit of Chad Gibson, Senior Planning Officer for Upper Arlington, ¶¶ 3-4).

All land and development in Upper Arlington is regulated by the Upper Arlington Unified Development Ordinance ("the UDO"), which employs "non-cumulative" or "exclusive" zoning.  Article 5 of the UDO sets forth the regulations applicable to the use and development of

land in Upper Arlington and establishes the zoning districts, including residential, commercial, planned, and miscellaneous.

The largest office building in Upper Arlington is located at 5000 Arlington Centre Boulevard (the "commercial office building"), in the ORC Office and Research District.  The commercial office building was previously occupied by AOL/Time Warner, and it generated substantial income tax and property tax revenues for the City.  In 2001, it accounted for 29% of the City's income tax revenues.  However, operations at the commercial office building declined over the course of recent years.  Time Warner ceased operations at this location in 2009.  Requiring commercial use of the commercial office building is consistent with the language and purposes of the ORC Office and Research District, as well as the Master Plan.  (Affidavit of Catherine Armstrong, Finance Director for Upper Arlington ¶¶ 4-7).

The purpose of the "ORC Office and Research District" is set forth in Section 5.03(A)(6) of the UDO as follows:

> [T]o allow offices and research facilities that will contribute to the City's physical pattern of planned, healthy, safe, and attractive neighborhoods.  The ORC district should also provide job opportunities and services to residents and contribute to the City's economic stability.  Permitted uses generally include, but are not limited to business and professional offices, research and development, book and periodical publishing, insurance carriers, corporate data centers, survey research firms, and outpatient surgery centers.

A complete list of permitted uses appears in Table 5-C of the UDO.  Schools of any type are not permitted in the ORC Office and Research District.  (Gibson Aff. ¶¶ 5-7).

Section 5.01(B) of the UDO governs the rules of application.  Section 5.01(B)(2) entitled "Permitted Uses" provides:

> Only a use designated as a permitted use shall be allowed as a matter of right in a zoning district and any use not so designated shall be prohibited except, when in

character with the zoning district, such other additional uses may be added to the permitted uses of the zoning district by an amendment to this UDO (Section 4.04).

Section 5.01(B)(3) entitled "Conditional Uses" states:

A use designated as a conditional use shall be allowed in a zoning district when such conditional use, its location, extent and method of development will not substantially alter the character of the vicinity or unduly interfere with the use of adjacent lots in the manner prescribed for the zoning district. To this end BZAP [Board of Zoning and Planning] shall, in addition to the development standards for the zoning district, set forth such additional requirements as will, in its judgment, render the conditional use compatible with the existing and future use of adjacent lots and the vicinity. Additional standards for conditional uses are listed in Section 6.10.

Rezoning is governed by Section 4.04 of the UDO titled "UDO and Official Zoning Map

Amendments" which specifically provides:

B.     Amendment Process: Amendments may be initiated in one of the following ways:

1. By the filing of an application to BZAP by the owner(s) of property within the area proposed to be affected or changed by said amendment;

2. By the adoption of a motion by BZAP; or

3. By the adoption of a motion by City Council and referral to BZAP.

All text and map amendments shall follow the same procedure. City Council initiated text or map amendments shall be referred to BZAP for recommendation prior to Council consideration.

C.     Standards for Approval: The following criteria shall be followed in approving zoning map amendments to the UDO:

1. That the zoning district classification and use of the land will not materially endanger the public health or safety;

2. That the proposed zoning district classification and use of the land is reasonably necessary for the public health or general welfare, such as by enhancing the successful operation of the surrounding area in its basic community function or by providing an essential service to the community or region;

3. That the proposed zoning district classification and use of the land will not substantially injure the value of the abutting property;

4.  That the proposed zoning district classification and use of the land will be in harmony with the scale, bulk, coverage, density, and character of the area the neighborhood in which it is located;

5.  That the proposed zoning district classification and use of the land will generally conform with the Master Plan and other official plans of the City;

6.  That the proposed zoning district classification and use of the land are appropriately located with respect to transportation facilities, utilities, fire and police protection, waste disposal, and similar characteristics; and

7.  That the proposed zoning district classification and use of the land will not cause undo [sic] traffic congestion or create a traffic hazard.

**C.      Tree of Life's Conditional Use Permit Application**

In early 2009, Upper Arlington officials became aware that Tree of Life was considering purchasing the commercial office building for use as a school.  On March 16, 2009, Matthew Shad, Deputy City Manager for Economic Development in Upper Arlington, met with Don Roberts of CB Richard Ellis, the listing agent, and advised him that schools were not a permitted use for that building.  (Shad Aff. ¶¶ 4-7).  On October 1, 2009, Tree of Life contracted to purchase the commercial office building, contingent upon zoning to allow a school.  Upon learning of the buyer, on November 11, 2009, the Upper Arlington Economic Development Director advised the Tree of Life school superintendent directly that schools were not a permitted use.

On December 21, 2009, Tree of Life filed an application with Upper Arlington for a Conditional Use Permit requesting to "use the property for a place of worship, church and residential, to the extent that residential includes a private school."  (Verified Compl. Ex. A).  In a letter dated December 28, 2009, Mr. Gibson responded to the application by stating, among other things, that "a private school is neither a permitted use nor a conditional use in the ORC,

Office and Research District (*see* UDO Table 5-C Article 5.01).  Therefore, this application will <u>not</u> be scheduled for BZAP review, even if a traffic study is submitted.  The applicant should submit a rezoning application if they wish to pursue a private school at this location."  (Verified Compl. Ex. B).

On January 5, 2010, Tree of Life appealed Mr. Gibson's determination to the Board of Zoning and Planning ("BZAP").  (Verified Compl. Ex. C).  On March 1, 2010, the BZAP held a public hearing on the issue, and subsequently issued a Board Order upholding Mr. Gibson's determination "that the conditional use application proposing a private school in an ORC District was inappropriate and would not be scheduled for BZAP review."  (Verified Compl. Ex. D).  On April 2, 2010, Tree of Life appealed the BZAP decision to the Upper Arlington City Council ("City Council").  (Verified Compl. Ex. E).  On April 26, 2010, the City Council held a public hearing on the appeal and ultimately voted to uphold the decision of the BZAP.  (Verified Compl. Ex. F).  The City Council concluded that "a private school is neither a permitted or conditional use in the Office and Research District and that rezoning is required if Appellant plans to pursue a private school at this location."  (*Id.* at 4).

Mr. Gibson's initial letter dated December 28, 2009, determined that the Tree of Life school was not a residential use that could be considered as a conditional use in the ORC Office and Research District; however, there was no determination as to whether Tree of Life was a "Place of Worship" or a "Church."  On January 5, 2010, counsel for Tree of Life wrote to Mr. Gibson asking for clarification as to "whether these uses, which are contained in the application, are, or are not, Conditional Uses in the ORC zoning district in the Upper Arlington UDO."  (Verified Comp. Ex. C at 6).  On February 26, 2010, Mr. Gibson addressed these issues by

confirming the hearing scheduled by the BZAP on March 1, 2010, to consider the conditional

use application for "a private school with ancillary uses." Mr. Gibson further stated: "At this

time, no conditional use application has been submitted for a church at this site." (Verified

Compl. Ex. G).

On March 3, 2010, Tree of Life appealed this determination to the BZAP. (Verified

Compl. Ex. H). The BZAP held a public hearing on June 7, 2010, and upheld Mr. Gibson's

determination. The BZAP stated that "for purposes of the UDO, the proposed primary use of the

property as a private school does not constitute a 'place of worship, church' as that term is used

in Table 5-C of Article 5 of the UDO, and is therefore not a conditional use in the ORC District."

(Verified Compl. Ex. I). On June 18, 2010, Tree of Life appealed the BZAP decision to the City

Council. (Verified Compl. Ex. J). On August 16, 2010, the City Council held a public hearing

and issued findings affirming the prior decisions that "for purposes of the UDO, the proposed

primary use of the property as a private school does not constitute a 'place of worship, church' as

that term is used in Table 5-C of Article 5 of the UDO, and is therefore not a conditional use in

the ORC District." (Verified Compl. Ex. K).

Despite Tree of Life's unsuccessful appeals with the BZAP and the City Council, it

continued with the purchase of the commercial office building. The closing on the commercial

office building occurred on August 11, 2010.

Tree of Life appealed the final decision of the Upper Arlington City Council to the

Environmental Division of the Franklin County Municipal Court, but ultimately withdrew that

appeal.

-9-

**D.     Procedural History**

Plaintiff initiated this case on January 5, 2011, with the filing of a Verified Complaint, alleging violations of its rights to free speech, free exercise of religion, peaceable assembly, equal protection, due process, and the establishment clause under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution, as well as a violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

Plaintiff filed a Motion for Preliminary Injunction on January 28, 2011, seeking to enjoin Defendant, the City of Upper Arlington, from enforcing Article 5.01, Table 5-C of the UDO prohibiting Plaintiff from operating a religious school in the ORC Office and Research District. Plaintiff sought injunctive relief on two of its claims: violation of the RLUIPA and violation of equal protection.  On April 27, 2011, this Court denied Plaintiff's Motion for Preliminary Injunction (Doc. 23).  Despite finding that Plaintiff demonstrated a potential likelihood of success on the merits of its RLUIPA claim, the Court found that the balance of harms did not strongly justify the issuance of a preliminary injunction.

Following discovery in this case, the parties filed cross-motions for summary judgment. On August 16, 2012, the Court issued an Opinion and Order granting Defendant's motion finding that the case was not ripe for review because Tree of Life had not petitioned the City to rezone the property at issue.  Plaintiff appealed this decision to the United States Court of Appeals for the Sixth Circuit.  While the appeal was pending, on December 21, 2012, Tree of Life submitted an application to the City seeking to amend the City's UDO to allow private religious schools as a permitted use in the ORC Office and Research District.  On March 11,

2013, the Upper Arlington City Council denied the application. The Council reasoned that if the application were approved, private religious schools would have been permitted, but not non-religious schools–creating a facial First Amendment problem. (*See* City Council Minutes, Doc. 81-7, Page ID# 2463).

Tree of Life moved to supplement the record on appeal with the denial of the rezoning and the Sixth Circuit granted that request and remanded the case to this Court "to determine in the first instance whether the claims are ripe." *Tree of Life Christian Schools v. City of Upper Arlington*, 536 F. App'x 580 (6th Cir. 2013).

Following remand, on October 17, 2013, Tree of Life submitted a second application to the City to rezone its property. This time, Tree of Life sought to rezone only its 15.81 acre parcel from ORC Office and Research District to residential. Upper Arlington's Senior Planning Officer, Chad Gibson, submitted a staff report to City Council on November 25, 2013, stating:

> Staff believes that the proposed rezoning is in direct opposition to numerous core master plan goals and objectives. The proposed zoning change would eliminate nearly 16 acres of extremely limited ORC zoned ground, which will reduce the amount of office and research space within the City. The Master Plan clearly indicates that the Henderson Road corridor has the greatest opportunity for intense office use, and approving such a rezoning would be contrary to the City's long-term financial interest. The majority of land use categories within Upper Arlington currently permits schools, public or private, religious or secular. The applicant has failed to establish the necessity of changing the zoning of an established office park from commercial to residential given the potential detrimental impacts to the City.
>
> A K-12 school has inherent characteristics which can be intrusive and destructive to an office park. Traffic, including school bus circulation, loading and unloading, can be challenging for an area to accommodate. A large number of young drivers and parents arriving and departing at similar (peak) times can tax the roadways and related infrastructure, reducing the level of service for signalized intersections. After school activities, such as band and theater productions can also bring large number of parents and students to an area, often necessitating overflow parking demands. Outdoor events, such as band practice, can create noise impacts for office workers who are attempting to do business and/or serve

-11-

clients. Furthermore, after reviewing the application, revised traffic study, and other materials, BZAP unanimously recommended against the proposed zoning map amendment.

(*See* November 25, 2013 Staff Report to Upper Arlington City Council, Doc. # 81-9).

Additionally, City Council heard from the Upper Arlington City Attorney who spoke to the seven points of analysis required for rezoning applications by Article 4.04(c) of the UDO. The focus of the analysis was that rezoning to eliminate commercially zoned property would be contrary to the master plan.  Based on the staff report and the comments by the Upper Arlington City Attorney made during the December 9, 2013 City Council meeting, the Council denied Tree of Life's rezoning request.  (*See* Minutes of the December 9, 2013 Upper Arlington City Council meeting, Doc. 81-11, Page ID# 2578-80).

The parties have agreed that this case is now ripe for consideration on the merits and have filed cross-motions for summary judgment.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir.

2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not

-13-

return a verdict in favor of the nonmoving party based on the presented evidence.  *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street*, 886 F.2d at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    DISCUSSION

Plaintiff, Tree of Life, initiated this case against Defendant, the City of Upper Arlington, asserting claims for violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"); violation of the right to free exercise of religion; violation of the Due Process Clause of the Fourteenth Amendment; violation of the Equal Protection Clause; violation of the Free Speech Clause; violation of the right to peaceable assembly under the First Amendment; violation of the Establishment Clause; and violation of Article I, Section 7 of the Ohio Constitution.[3]

The parties have filed cross-motions for summary judgment.  Plaintiff seeks summary judgment on its RLUIPA claim, asserting that the City's UDO as applied to Tree of Life violates RLUIPA's equal terms provision.  Plaintiff does not address any of its other claims, but rather states in a footnote "Tree of Life continues to assert that the City's UDO, as applied and on its face violates RLUIPA's substantial burden provision and the First and Fourteenth Amendments to the United States Constitution.  Tree of Life incorporates herein fully and relies upon its

---

[3] This Court previously held that Upper Arlington's UDO does not violate the Equal Protection Clause.  (*See* April 27, 2011 Opinion and Order, Doc. 23).

earlier briefing on these points." (Pl.'s Mot. for Summ. J. at 20). All of Plaintiff's claims were fully briefed by both parties in the previous motions. The case was dismissed on ripeness grounds and no decision was ever rendered on the merits. Therefore, those motions and arguments are still pending before the Court and will be considered at this time. The Court will address each of Plaintiff's claims in turn.

**A.      RLUIPA Claim**

This Court previously concluded in its April 27, 2011 Opinion and Order that Plaintiff demonstrated a likelihood of success on the merits on its RLUIPA claim. However, after the conclusion of discovery in this case and further development of the arguments of the parties, the Court is compelled to find that Plaintiff's RLUIPA claim lacks merit. Specifically, the Court previously applied the analysis used in prior RLUIPA cases in which courts had to search for proper comparators to churches, looking at community centers, hotels, private clubs, lodges, bars and nightclubs, daycare centers, hospitals, and charitable organizational offices. However, Defendant asserts, and the Court now agrees, that the proper comparator for a religious school is a non-religious or secular school, as it constitutes an "apples to apples" comparison. Given the existence of an "apples to apples" comparator, it is unnecessary and improper to identify an alternate comparator.

Plaintiff Tree of Life argues that Upper Arlington's UDO violates RLUIPA's "equal terms" provision, which is set forth in Section (b)(1) as follows: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).[4] "The

_____

[4] Plaintiff in its Verified Complaint alleges that Defendant's UDO also imposes a substantial burden on Plaintiff's religious exercise, which would be a separate violation under

equal-terms provision is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses." *Digrugilliers v. City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007) (citing *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1002-03 (7th Cir. 2006)).  While this provision of RLUIPA "has the feel of an equal protection law, it lacks the similarly situated requirement usually found in equal protection analysis." *Midrash Shephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1229 (11th Cir. 2004).  RLUIPA does not require a city to give religious assemblies and institutions more rights than other users of land in the same zones have. *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, 611 F.3d 367, 371 (7th Cir. 2010) (citing *Digrugilliers*, 506 F.3d at 615).  Further, "RLUIPA's Equal Terms provision requires equal treatment, not special treatment." *Primera Inglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1313 (11th Cir. 2006).

RLUIPA explicitly places the burden on the plaintiff to initially establish a *prima facie* case supporting its claim.  42 U.S.C. § 2000cc-2(b).  For an "equal terms" violation, the plaintiff's *prima facie* case is comprised of four elements: "(1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution." *Primera Inglesia*, 450 F.3d at 1307.  The statute does not define the meaning of "equal terms" and the Sixth Circuit has not yet spoken as to the definition.  Those courts that have defined the term are not in agreement as to its meaning. *See Roman Catholic Bishop of Springfield v. City of Springfield*, 760 F. Supp.

---

RLUIPA.  42 U.S.C. § 2000cc(a)(1).  However, in the extensive briefing before the Court, Plaintiff has only developed arguments in support a RLUIPA Equal Terms violation.  Therefore, any other allegations that Defendant violated other provisions of RLUIPA are deemed abandoned.

2d 172, 188 (D. Mass. 2011) (comparing cases).  The disagreement among the Circuits "centers on how broadly to construe the phrase 'nonreligious assembly or institution'" and what is a similarly situated comparator.  *Id.* at 188.  The Eleventh Circuit requires a plaintiff to demonstrate unequal treatment as compared to any secular institution or assembly.  *See, e.g., Midrash*, 366 F.3d at 1230-31.  The Third Circuit has held that "a regulation will violate the [e]qual [t]erms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similar situated *as to the regulatory purpose*." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Beach*, 510 F.3d 253, 266 (3d Cir. 2007) (emphasis in original).  The Seventh Circuit applied a modified version of the Third Circuit's test, concluding that the focus should be on secular assemblies or institutions similarly situated as to the "accepted zoning criteria" rather than the regulatory purpose.  *River of Life*, 611 F.3d at 371.[5]

Since the issuance of the preliminary injunction order, two additional circuit courts have addressed the equal terms provision of RLUIPA: *Elijah Group v. City of Leon Valley*, 643 F.3d 419 (5th Cir. 2011) and *Centro Familiar Cristiano Buenas Nevas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2011).  The Fifth Circuit held that a zoning ordinance violated RLUIPA's equal terms provision because "it prohibits the Church from even applying for a SUP [Special Use Permits] when, a nonreligious private club may apply for a SUP."  *Elijah Group,* 643 F.3d at 424.  The court held that the equal terms provision of RLUIPA "must be measured by the ordinance itself

---

[5] The Sixth Circuit had not yet adopted a test for evaluating a RLUIPA equal terms claim. The Court analyzed the different tests set forth by the Third, Seventh, and Eleventh Circuits in detail in its previous Opinion and Order.  (*See* Doc. 23).  The Court does not find it necessary to repeat the analysis with respect to the tests of each of the aforementioned circuits.

and the criteria by which it treats institutions differently." *Id*. The Fifth Circuit explicitly stated that it was not adopting any particular test adopted by another circuit, but its test appears to be similar to that used by the Third, Seventh, and Second Circuits who view the equal terms provision in light of the zoning criteria or purpose of the zoning ordinance.[6]

The Ninth Circuit also construed the equal terms provision, adopting the Third Circuit's approach along with the Seventh Circuit's refinement of the test. *Centro Familiar*, 651 F.3d at 1172-73. The Ninth Circuit held that the "city may be able to justify some distinctions drawn with respect to churches, if it can demonstrate that the less-than-equal-terms are on account of a legitimate regulatory purpose, not the fact that the institution is religious in nature." *Id*. The court realized that "our analysis is about the same as the Third Circuit's" but also recognized that the Seventh Circuit's refinement of this test was appropriate. The court ultimately stated the test to be used as follows:

> The city violates the equal terms provision only when a church is treated on less than equal terms with a secular comparator, similarly situated with respect to an accepted zoning criteria. The burden is not on the church to show a similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance. *Id*. at 1173.[7]

Plaintiff Tree of Life asserts both a facial challenge and an as-applied equal terms challenge to Upper Arlington's UDO. This Court has previously found that Upper Arlington's

---

[6] *See Lighthouse Institute,* 510 F.3d at 265; *River of Life,* 611 F.3d at 371; *Third Church of Christ Scientist v. City of New York*, 626 F.3d 667, 669 (2nd Cir. 2010).

[7] The Ninth Circuit noted that its test departed from that utilized by the Third Circuit in its burden shifting. The Third Circuit placed the burden on the church while the Ninth Circuit placed the burden on the government, once a *prima face* case is established. *Centro Familiar*, 651 F.3d 1173.

UDO is facially neutral.  The August 16, 2012 Opinion and Order specifically states:

> Plaintiff fails to explain how the UDO is unconstitutional on its face.  There is no evidence that Upper Arlington's UDO allows other non-secular uses that are not permitted in the ORC Office and Research District to not seek rezoning.  Upper Arlington has been consistent from the time it became aware that Plaintiff intended to purchase the commercial building that schools, both secular or non-secular, are not permitted in the ORC, Office and Research District.

(Doc. 70 at 20).  This remains true.  Plaintiff has not provided any additional evidence to support a facial challenge to the UDO.  Upper Arlington treats both religious schools and secular schools the same.  In fact, both secular and non-secular schools are permitted in over 95% of the City of Upper Arlington that is zoned residential.

With respect to Plaintiff's as-applied equal terms RLUIPA claim, there is no dispute between the parties that Plaintiff Tree of Life is a religious assembly or institution[8] and that it has been subjected to a land use regulation, in this case the City of Upper Arlington's UDO, zoning law.  The analysis therefore turns on whether Upper Arlington's UDO treats Plaintiff, a religious school, on less than equal terms, with a nonreligious assembly or institution.

Both Plaintiff and Defendant assert that their respective positions will prevail no matter what test this Court, and ultimately the Sixth Circuit, chooses to apply to the facts of this case.  Whichever test this Court decides to follow —  which it need not decide now — Plaintiff is required to identify a similar secular comparator that received more favorable treatment.  The

---

[8] Many courts analyzing RLUIPA claims have found facilities used for religious education to fall under RLUIPA's protection.  *See Living Water Church of God v. Charter Twp. of Meridian*, 384 F. Supp. 2d 1123, 1129-30 (W.D. Mich. 2005) ("Plaintiff's use of the proposed facility for a religious oriented school and for other ministries of the church constitutes religious exercise"); *see also Castle Hills First Baptist Church v. City of Castle Hills*, 2004 U.S. Dist. LEXIS 4669 (W.D. Tex. Mar. 17, 2004); *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1213 (C.D. Cal. 2002).

Court finds the tests set forth by the Third and Seventh Circuits to be the most reasonable and pragmatic; therefore, the Court will analyze the facts of this case under these respective tests regarding regulatory purpose and accepted zoning criteria. Then, the Court will determine based on that analysis whether there are secular assemblies that are treated more favorably in light of the stated zoning criteria or purposes.

Under the Third Circuit's "Regulatory Purpose" approach, "a regulation will violate the Equal Terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to their regulatory purpose." *Lighthouse*, 510 F.3d at 266. In *Lighthouse*, a church bought a property in a commercial district that had been re-developed to strengthen retail trade and city revenues. Churches were not a permitted use in the district and the application to use the property as a church was denied. The denial was upheld by the court finding that allowing a church would be inconsistent with the purposes of the sector. The regulatory purpose approach allows cities or local governments to justify unequal treatment by pointing to its objectives in enacting the zoning regulations and proving that the secular assemblies treated more favorably do not damage those objectives.

The City of Upper Arlington has informed Plaintiff through the various zoning applications that a school is not a permitted or conditional use in the ORC Office and Research District. The purpose of the "ORC Office and Research District" is set forth in Section 5.03(A)(6) of the UDO as follows:

> [T]o allow offices and research facilities that will contribute to the City's physical pattern of planned, healthy, safe, and attractive neighborhoods. The ORC district should also provide job opportunities and services to residents and contribute to the City's economic stability. Permitted uses generally include, but are not limited to business and professional offices, research and development, book and

periodical publishing, insurance carriers, corporate data centers, survey research
firms, and outpatient surgery centers.

Other permitted uses include:  banks, barber shops and beauty parlors, daycare centers[9], coffee

shops, hotels/motels, and hospitals.  The City argues that Plaintiff's proposed use of the building

in the ORC Office and Research District as a school is not consistent with these regulatory

purposes.  Specifically, the City asserts that the "uses permitted in the district are narrowly

tailored to comport with office use, research use, and supporting commercial activities.  These

uses are also consistent with the criteria articulated in the Upper Arlington Master Plan,

including the importance of generating tax revenue."  (Def.'s Mot. at 13).  Further, the City

asserts that the fact that all schools are forbidden in this district is consistent with these criteria,

and "the fact that the district does not distinguish between religious and non-religious schools

means that similar religious and non-religious assemblies are being treated the same." (*Id*.).

Finally, the City argues that "putting a school there would be at odds with the existing physical

pattern of planning, which provides for schools in Residential Districts, not Commercial

Districts."  (*Id*.).

There is no question that the City of Upper Arlington has carefully set forth its regulatory

purpose of the ORC Office and Research District in the City's Master Plan and in the UDO, and

those purposes serve a compelling state interest.  Moreover, it is not disputed that Upper

Arlington has very little area designated as commercial, and to rezone the 15.81 acres in question

---

[9] The City of Upper Arlington has removed daycare centers as a permitted use in the
ORC Office and Research District.  The Court does not find it necessary to address the relevance
of this removal to Plaintiff's RLUIPA claim because it is not a proper comparator under the facts
of this case.

-21-

as residential and allow for a school would be contrary to the purpose of the district.  The City treats all schools the same by excluding all schools from the ORC Office and Research District.  All schools, however, are permitted in the City's residential districts, which make up 95.3% of all the land in the City of Upper Arlington.  The City has presented strong reasons for its decision.  Schools are not offices or research facilities, nor are they ancillary uses to those, such as coffee shops and daycares.  Based on the evidence presented, allowing a school, religious or not, within the ORC Office and Research District would be inconsistent with the purposes of the ORC Office and Research District.

Even under the Seventh Circuit's test, which substitutes "accepted zoning criteria" for the Third Circuit's regulatory purpose approach, Plaintiff cannot establish a violation under the Equal Terms provision of RLUIPA.  In *River of Life*, the Seventh Circuit recognized that generating municipal revenue can be promoted by setting aside some land for commercial use only.  The village of Hazel Crest created "a commercial district that excludes churches along with community centers, meeting halls, and libraries because these secular assemblies, like churches, do not generate significant taxable revenue or offer shopping opportunities.  Similar assemblies are being treated the same."  *River of Life*, 611 F.3d at 373.  Again, the City has set forth accepted zoning criteria in the ORC Office and Research District and the permitted uses are consistent with the conventional criteria articulated in the Upper Arlington comprehensive master plan, including the importance of generating tax revenue.[10]  Further, the uses permitted in

---

[10]  Patricia E. Salkin, American Law of Zoning § 9:15 (5th ed. 2010), explains with specific reference to commercial districts: "All commercial uses are not created equal.  Some require pedestrian traffic; others create hazards for pedestrian traffic.  Some commercial uses cause pedestrian traffic during the daylight hours; others operate at night and are quiet in the daytime.  The list of characteristics could be extended, but this small sample suggests that

the ORC Office and Research District are narrowly tailored to comport with office use, research use, and supporting commercial activities.

Plaintiff urges the court that there "is no need, however, for the religious institution to show that there exists a secular comparator that performs the same functions." *Lighthouse Institute*, 510 F.3d at 266. A plaintiff bringing an as-applied equal-terms challenge must present evidence that a nonreligious comparator received unequal treatment under the challenged regulation. *See Primera Iglesia*, 450 F.3d at 1311. For example, "[i]f a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision." *River of Life*, 611 F.3d at 371. In another formulation, the Seventh Circuit explained that an equal-terms claim exists "whenever religious land uses are treated worse than comparable nonreligious ones." *Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007). If a plaintiff does not offer a suitable comparator, however, there can be no cognizable evidence of less than equal treatment, and the plaintiff cannot meet its initial burden of proof. *Primera Iglesia*, 450 F.3d at 1311 (citing 42 U.S.C. § 2000cc-2(b)).

Here, the Court's search for an appropriate comparator to a religious school begins and ends with a non-religious school. Unlike the other comparators that Plaintiff wants the Court to use for its analysis, there is no practical difference, for the purpose of land use regulation,

---

residential uses in commercial neighborhoods will injure, as well as be injured by, the adjacent commercial uses. And it suggests further that some commercial uses will be incompatible with others . . . . The most common drafting answer to the problems sketched above is the 'exclusive' zoning ordinance . . . . Districts are established for named uses, or groups of uses, and all others are excluded. The chief virtue of such ordinances is that they create districts for commerce and industry, and exclude from such districts residential and other uses which are capable of interfering with the planned use of land."

between a religious and non-religious school.  The City of Upper Arlington identifies at least two schools that are currently operating in the residential zoning district: St. Andrews Catholic schools and the private secular school, Wellington.  The City has never done anything to attempt to exclude these schools from operating, nor are religious schools treated less favorably than secular schools.  All schools are excluded from the ORC Office and Research District.

At least two other district courts have only looked to secular schools as a comparator when evaluating an Equal Terms RLUIPA claim brought by a religious school.  In *Hillcrest Christian School v. City of Los Angeles*, the court, in analyzing the school's Equal Terms RLUIPA claim, looked to whether plaintiff was treated on less than equal terms with non-religious schools and ultimately found that there was "no discernible disparity between the treatment of Hillcrest and any other non-religious school."  No.: 05-cv-8788, 2007 U.S. Dist. LEXIS 95925, *19 (C.D. Cal. 2007).  In *Irshad Learning Ctr. v. County of Dupage*, the court held that plaintiff's proposed use would have a greater impact on the surrounding neighborhood than the use approved for a comparator, the Balkwill School.  937 F. Supp. 2d 910 (N.D. Ill. 2013).  Based on the differences, the court held that "Plaintiff has not established that the Balkwill School would have been treated any differently had it sought a Conditional Use for the use proposed by ILC."  *Id.* at 936.

As set forth above, RLUIPA requires "equal treatment, not special treatment."  *See Primera Iglesia*, 450 F.3d at 1313.  To interpret RLUIPA to require Upper Arlington to allow Plaintiff to operate a religious school in the ORC Office and Research District, would effectively require Upper Arlington to treat Plaintiff more favorably than secular schools, which are prohibited from operating in that district.  Stated differently, while RLUIPA operates as a shield

-24-

to protect religious assemblies or institutions from unequal treatment, Plaintiff attempts to use the equal terms provision as a sword to receive preferential treatment.  Upper Arlington's UDO treats secular and non-secular schools alike, and it treats all schools differently than Plaintiff's proposed comparators, such as daycares, hospitals, and charitable organizations offices.  *See Racine Charter One, Inc. v. Racine Unified School Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) ("it is clear that similarly situated individuals must be very similar indeed.").  Regardless of which test is applied, even including those tests set forth by other circuits,  Upper Arlington's UDO does not violate the Equal Terms provision of RLUIPA.

**B.      14th Amendment Equal Protection Clause Claim**

This Court has previously concluded that Plaintiff cannot establish an Equal Protection Clause claim because there is no similarly situated comparator that received different treatment. Section 1 of the Fourteenth Amendment provides, in pertinent part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. Amend. XIV, § 1.  To establish a violation of the Equal Protection Clause, it must first be shown that the defendant's actions result in similarly-situated individuals receiving disparate treatment.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Gillard v. Norris*, 857 F.2d 1095, 1100 (6th Cir. 1988).  If it is shown that similarly-situated persons receive disparate treatment, and if that disparate treatment invades a "fundamental right" such as speech or religious freedom, then the strict scrutiny standard governs and the defendant's actions will be sustained only where they are narrowly tailored to serve a compelling government interest.  *See Reno v. Flores*, 507 U.S. 292, 302 (1993); *37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614, 621 (6th Cir. 1997).  It is well-established

that, "absent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land use context, a plaintiff must demonstrate governmental action wholly impossible to relate to legitimate governmental objectives." *Forseth v. Village of Sussex*, 199 F.3d 363, 370-71 (7th Cir. 2001); *see also City of Cleburne*, 473 U.S. at 440 (unless a statute classifies by race, alienage, or national origin or impinges on fundamental constitutional rights, "the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest").

This Court previously concluded that there are no schools, religious or non-religious, permitted in the ORC Office and Research district.  Further, allowing a school to operate in the largest office building in the City presents a threat to the financial stability of the City.  Nothing in the record has changed to support Plaintiff's Equal Protection claim.  Plaintiff still argues the Court should apply the higher level of scrutiny.   Plaintiff still maintains that the City of Upper Arlington has no rational basis for prohibiting Tree of Life's Christian school when other similar uses, such as daycare centers, are permitted uses in the same zone.

The Court finds that Plaintiff has failed to establish that it is treated differently from other similarly-situated institutions, and further that it cannot provide that this alleged disparate treatment invaded its fundamental rights to justify the application of strict scrutiny.  A zoning ordinance imposing "restrictions in respect of the use and occupation of private lands in urban communities" such as the "segregation of residential, business, and industrial buildings" satisfies the rational basis test as "a valid exercise of authority."  *Village of Euclid v. Amber Realty Company*, 272 U.S. 365, 386-87, 394, 397 (1926).

This Court previously held and still maintains that the City of Upper Arlington's UDO

-26-

passes rational basis review.  The City has a reasonable interest in imposing restrictions on the use of land in its city limits.  *See Village of Euclid*, 272 U.S. at 386-87.  The Court therefore concludes that the City of Upper Arlington's UDO does not violate the Equal Protection Clause.

## C.  Free Exercise of Religion under the First Amendment

The general rule under the Free Exercise Clause is that a neutral law of general applicability may burden religious exercise.  *See Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990).  If a law is not neutral or generally applicable, then government cannot justify placing a substantial burden on religious exercise.  *Id.* at 878.  In addition, any law which permits individualized, discretionary exemptions is not neutral or generally applicable. *Id.*  Several courts have found that zoning laws requiring permits involve individualized assessments.  *See Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 498-99 (S.D.N.Y. 2010); *Lighthouse Inst.*, 510 F.3d at 276-77 (holding that zoning law was not system of individualized assessments).  Plaintiff argues that the UDO is not neutral and not generally applicable because it requires an application and hearing before the BZAP and the City Council. Additionally, Plaintiff asserts that the UDO treated Plaintiff's school on less than equal terms with secular assemblies or institutions such as daycares, hospitals, and charitable office uses, and, accordingly is not neutral.

Defendant argues that it did not violate the free exercise clause because they applied no coercion in adjudicating Plaintiff's attempt to seek zoning as a church.  Defendant argues, and the Court agrees, that any burden imposed on Plaintiff was self-inflicted.  Plaintiff was fully aware of the zoning restrictions when it purchased the building.  Plaintiff was specifically informed by Upper Arlington City Council that "a private school is neither a permitted or a

-27-

conditional use in the Office and Research District and that rezoning is required if Appellant plans to pursue a private school at this location." Despite this clear instruction, Plaintiff initially failed to seek rezoning and instead sought a conditional use permit. Even after seeking rezoning, Plaintiff still cannot demonstrate how Upper Arlington's UDO is not neutral. Defendant argues, and the Court agrees, that Tree of Life was treated just as any other private school would have been treated, irrespective of religion. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Free Exercise claim.

**D.      Establishment Clause of the First Amendment**

Plaintiff Tree of Life argues that the City of Upper Arlington's UDO violates the Establishment Clause because it does not define the terms "church" or "place of worship" and because its normal procedures for determining whether a use falls within those terms excessively entangles it with religion. Plaintiff asserts that the City wrongfully determined that Tree of Life was not a place of worship. Plaintiff argues that it was subjected to an "intrusive religious inquiry during its appeal regarding whether it met the definition of place of worship in the UDO." (Pl.'s MSJ at 15).

Plaintiff relies on *Colorado Christian University v. Weaver*, in support of its argument that the process utilized by Defendant was improper. In *Colorado Christian*, the Colorado law at issue required the state to determine whether an institution was "pervasively sectarian" to be eligible for state scholarship programs. 534 F.3d 1245 (10th Cir. 2008). The court held that the determination whether an institution was pervasively sectarian was an "intrusive religious inquiry," that required the state to "troll through a person's or institution's religious beliefs" in violation of the Establishment Clause. *Id.* at 1261. Based on this analysis, Plaintiff argues that

Upper Arlington's procedures and ultimate outcome was unconstitutional.

Defendant, however, argues that Plaintiff's reliance on *Colorado Christian* is misplaced. Defendant asserts, and the Court agrees, that no such inquiry was conducted by the City of Upper Arlington that delves into the consideration of religious practices. The City merely evaluated the purpose that Tree of Life proposed for the building, a K through 12 school and determined that it was not a place of worship, but a school. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Establishment Clause claim.

**E.     Unconstitutionally Vague under the Fourteenth Amendment**

Plaintiff argues that the City of Upper Arlington's UDO is unconstitutionally vague and repeats many of the same arguments it advanced in support of its claim that the UDO violates the Establishment Clause. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Supreme Court noted that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [government officials] for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09. Plaintiff relies on *State v. Cameron*, in which a court found that a zoning ordinance that did not define the phrase "churches and similar places of worship" was unconstitutionally vague when it was applied to prohibit a pastor from using his home once a week for religious service for his congregation. 498 A.2d 1217, 1220 (1985). The court held that "it cannot, however, be determined with sufficient certainty what kinds of religious practices were intended to be governed by the ordinance." *Id.* at 1225. The court continued:

> The ordinance does not give fair warning or notice to enable a person of average intelligence and experience to know what activities could turn his or her home into a church.  Further, the ordinance does not foreclose unguided discretion in its application; it provides no sufficient assurance that its broad and undefined terms could be fairly, consistently, and uniformly enforced.

*Id.*

Plaintiff argues that this case is like *Cameron* in that there is nothing in the UDO or elsewhere that defines "place of worship" or gives fair notice of what a "place of worship" is. Further, Plaintiff asserts that there is nothing to prevent the City of Upper Arlington from applying this term on an *ad hoc* and subjective basis with the dangers of arbitrary and discriminatory application.  *See Grayned*, 408 U.S. at 109.  Plaintiff therefore concludes that the UDO is unconstitutionally vague on its face and as applied.

Plaintiff, however, must establish that the UDO is unconstitutionally vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).  Defendant correctly notes that the UDO's use of words like "churches", "places of worship", and "residences" does not require a separate and precise definition of those terms.  The City of Upper Arlington has chosen to rely on the commonly held definitions of such terms.  Senior Planning Officer Gibson testified, for instance, that if there is uncertainty concerning a term contained in the UDO, it behooves one to consult a dictionary or the American Planning Association's Glossary.  (Gibson Depo. at 67). This Court agrees that the UDO is not unconstitutionally vague on its face.

The cases relied upon by Plaintiff concerned what uses or activities were permitted in the zoning code.  However, in this case, there is no question under the City of Upper Arlington's UDO what a "church" or "place of worship" is or whether such conditional uses are permitted in

the ORC Office and Research District.  Anyone reading the UDO would have seen that "school" was not one of the permissible zoned uses of the ORC Office and Research District.  Anyone reading the UDO would have promptly realized that if one wished to use ORC Office and Research District zoned property for a school, a rezoning decision by the City would be necessary.  Indeed, not coincidentally, Tree of Life sought just such a decision on multiple occasions.  The UDO, in short, is not unclear or vague – Tree of Life simply wishes it were because they do not like what is says.

Further, as applied to Plaintiff, the UDO is not unconstitutional.  As discussed above, Plaintiff plans to use the property in question as a school, not as a church or place of worship, as these terms are commonly defined.  Plaintiff was instructed to seek rezoning, and did in fact. The rezoning application was denied for valid reasons.  Any school attempting to relocate to the ORC Office and Research District, regardless of religion, would have been instructed to go through the same process.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's vagueness claim.

## F.    Free Speech Claim under the First Amendment

Plaintiff asserts that the City of Upper Arlington's UDO violates the Free Speech Clause of the First Amendment because it is an invalid prior restraint on speech.  Plaintiff also asserts that for all the same reasons asserted in this section, that the UDO violates the Peaceable Assembly Clause.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577-78 (1980) (holding that the right of peaceable assembly is a right cognate to free speech and is equally fundamental because people assemble to exercise their right to free speech).

Courts have held that when zoning laws seek to determine whether a religious exercise

can occur, they trigger a free speech analysis.  *See Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 468-69 (8th Cir. 1991) (holding that a zoning ordinance that placed "determinative weight on the fact that the proposed use is a church" to decide whether it was allowed in the zoning district triggered a free speech analysis); *see also Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961, 980-81 (N.D. Ill. 2003) (holding that zoning codes that restrict churches implicate the free speech doctrine).

In the case at bar, Plaintiff argues that the City's UDO restricts the location of a religious use, therefore implicating the Free Speech Clause.  Plaintiff's assertions that the UDO is an invalid prior restraint are the same as those stated in support of the argument that the City's UDO is unconstitutionally vague.

Defendant argues that Plaintiff's free speech claim fails because the City did not exclude churches from the ORC Office and Research District.  The City excluded private schools, some of which are secular and do not engage in religious speech.  The City does not single out religious schools.  It prohibits all schools and therefore Plaintiff's free speech argument fails.  Additionally, the City's UDO does not grant overly broad discretion to officials to determine whether or not to allow the speech and do not contain adequate standards to guide the officials' decision.  Defendant argues, and the Court agrees, that the standards for determining whether or not to permit a school in the ORC Office and Research District are clear and objective.  Therefore, for the same reasons as set forth with respect to Plaintiff's unconstitutionally vague claim, Plaintiff's free speech claim also fails.  No prior restraint has been exercised on Plaintiff.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's free speech claim.

**G.    State Law Claims**

Plaintiff has also asserted state law claims under Article I, Section 7 of the Ohio Constitution.  However, Plaintiff only asserts federal subject matter as the basis for this Court's jurisdiction.  Having granted summary judgment to the Defendant on the claims under which Plaintiff asserted federal subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

It is well settled that a District Court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed.  *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  Therefore, pursuant to 28 U.S.C. §1367(c)(3) and (d), the Court will dismiss Plaintiff's state law claims against Defendant without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.  Final judgment shall be entered in favor of Defendant as to all of the federal claims.  The state law claims are dismissed without prejudice.

The Clerk shall remove Documents 79 and 82 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*

-33-

**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**